# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: CLARENCE O'NEAL LEVERETTE, SR. | CASE NO. 11-51548-KMS |
| DEBTOR | CHAPTER 13 |
| CLARENCE O'NEAL LEVERETTE, SR. | PLAINTIFF |
| V. | ADV. NO. 12-05005-KMS |
| COMMUNITY BANK | DEFENDANT |

## MEMORANDUM OPINION

This matter came before the Court for trial on April 30, 2013, (the "Trial")[1] on the Adversary Proceeding Against Community Bank for an Order Requiring Turnover of Property or Alternatively for Contempt (Adv. Dkt. No. 1)[2] (the "Complaint")[3] filed by Clarence O'Neal Leverette, Sr. ("Leverette" or "Debtor") and Answer and Affirmative Defenses (Adv. Dkt. No. 15). At Trial, John H. Anderson represented Leverette and Stephen E. Gardner represented Community Bank. At the conclusion of the Trial, the Court allowed the parties to submit supplemental briefs.[4] After briefs were filed, the Court took the matter under advisement.

---

[1] At the close of Leverette's case in chief, Community Bank moved, ore tenus, to dismiss the adversary proceeding. The Court denied the request.

[2] Unless stated otherwise, citations to the record are as follows: (1) citations to docket entries in the adversary proceeding, Adv. Proc. No. 12-05005-KMS, are cited as "(Adv. Dkt. No. ___)"; and (2) citations to docket entries in the main bankruptcy case, Case No. 11-51548-KMS, are cited as "(Dkt. No. ___)".

[3] The Complaint asserts two causes of action—a claim for turnover and a claim for contempt. The claim for turnover was dismissed by prior order of the Court on March 15, 2012. (Adv. Dkt. No. 13). Thus, the claim for contempt is the only issue before the Court. (Pre-Trial Order, Adv. Dkt. No. 43, at ¶ 5(A)).

[4] On the morning of the Trial, Community Bank filed a trial brief (Adv. Dkt. No. 45) to which Debtor's counsel requested an opportunity to respond. The Court set a briefing schedule for the parties to submit supplemental briefs. On May 20, 2013, Community Bank filed its Amended Brief (Adv. Dkt. No. 48), and the Debtor filed its Trial Brief (Adv. Dkt. No. 49) on June 10, 2013. Community Bank did not submit a rebuttal brief.

In sum, Leverette asserts that Community Bank willfully violated the stay imposed by 11 U.S.C. § 362[5] when the bank repossessed his tractor after he filed bankruptcy and, despite having knowledge of the filing, the bank refused to return the same. Having considered the evidence and testimony at Trial,[6] including the post-trial briefs submitted by the parties, the Court finds that Community Bank should be held in contempt for willfully violating the automatic stay and the Debtor should be awarded part, but not all, of the requested damages for the reasons set forth below.[7]

## *JURISDICTION*

The Court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334, notwithstanding that the Debtor's underlying bankruptcy case has been dismissed.[8] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). *In re Martin*, No. 08-50871-KMS, slip op. at 2 (Bankr. S.D. Miss. Sept. 30, 2011) (*citing Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

---

[5] "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code. All Code sections hereinafter will refer to the Bankruptcy Code unless specifically noted otherwise.

[6] Leverett, Ben F. Burkett and Jay Swindle, Senior Vice President of Community Bank Ellisville, testified at Trial.

[7] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent any conclusion of law is construed as a finding of fact, it is also adopted as such.

[8] The underlying bankruptcy case was dismissed on July 17, 2012. (Dkt. No. 150). Early in this adversary proceeding, Community Bank filed a motion to dismiss asserting, among other things, that the adversary proceeding should be dismissed because the underlying bankruptcy case had been dismissed. The Court denied this request on the basis that adversaries asserting damages for stay violations survive dismissal of the bankruptcy case. (Adv. Dkt. No. 13); *see In re Rodriguez*, No. 07-24687, 2012 WL 589553, at *1 (Bankr. D. N.J. Feb. 22, 2012) (collecting cases), *In re Davis*, 177 B.R. 907, 911-12 (B.A.P. 9th Cir. 1995); *In re Johnson*, 390 B.R. 414, 418-19 (B.A.P. 10th Cir. 2008) *aff'd*, 575 F.3d 1079 (10th Cir. 2009).

### *FINDINGS OF FACT*

On July 8, 2011, Leverette, a former poultry farmer,[9] filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.[10] Community Bank is a secured creditor with a lien on a 1999 C80 Case tractor (the "Tractor"), among other things.[11] Although disagreeing on the specific date, the parties do not dispute that Community Bank repossessed the Tractor.[12] Jay Swindle, Senior Vice President of Community Bank Ellisville, testified that on July 12, 2011, the same day that foreclosure was scheduled on Debtor's real property and the same day that the bank alleges the Tractor was repossessed, the bank's attorney received a call notifying him that Leverette had filed bankruptcy.[13] According to Swindle, after receiving notice of the bankruptcy, the bank did not proceed with the scheduled foreclosure. Swindle maintained that the repossession agent hired by the bank had already picked up the Tractor at the time the bank learned of the bankruptcy. Despite knowledge of the bankruptcy filing and Leverette's plans to

---

[9] Leverette lost his poultry contract in or about August of 2010. Thereafter, in early 2011, Leverette decided to begin crop farming.

[10] The underlying bankruptcy case was dismissed on July 17, 2012, however, the Court retained jurisdiction over this adversary proceeding. *See supra* note 8.

[11] (Stipulated fact – Pre-Trial Order, Adv. Dkt No. 43, at ¶ 5(A)). In his schedules, Debtor listed Community Bank as a secured creditor with a lien on the farm and chicken houses and a claim in the amount of $230,000.00 secured by property Debtor valued at $25,000.00. (Dkt. No. 11, at 8). Community Bank filed two separate proofs of claim: (1) Claim 9-1, in the amount of $303,620.54 secured by real property; and (2) Claim 10-1, in the amount of $21,856.36 secured by farming equipment, including the Tractor.

[12] (Stipulated fact – Pre-Trial Order, Adv. Dkt No. 43, at ¶ 5(B)). Leverette thought that the Tractor was repossessed during the last week of August 2011; Community Bank suggested that the repossession occurred on July 12, 2011, the date of the scheduled foreclosure. In any event, both dates are post-petition.

[13] Swindle did not identify who alerted the bank of Leverette's bankruptcy. Leverette testified that, believing his tractor was stolen, he called the bank to obtain the serial number for a police report and learned that the bank had possession of the Tractor. It is unclear to the Court, whether Leverette informed the bank, at that time, that he had filed bankruptcy. Leverette did include the bank as a creditor on his creditor's mailing matrix for bankruptcy notices and in his bankruptcy schedules. (Dkt. Nos. 2, 11). Regardless, the bank does not dispute having notice of the bankruptcy and there is no allegation regarding the sufficiency of such notice. *See Johnson v. Magee Rentals, Inc. (In re Johnson)*, 478 B.R. 235 (Bankr. S.D. Miss. 2012) (oral notice of bankruptcy is sufficient for purposes of knowledge of the stay).

pursue crop farming,[14] the bank did not return Debtor's tractor.[15] On November 7, 2011, almost four months after the repossession, the bank filed a motion for relief from the stay to enforce its rights against its collateral including the Tractor. (Dkt. No. 59). After several hearings, the Court entered an order lifting the automatic stay on January 25, 2012. (Dkt. No. 94). On February 3, 2012, Leverette filed his Complaint asserting that Community Bank violated the automatic stay when it failed to return the Tractor and that it should be held in contempt and sanctioned accordingly. (Compl., at 1). Community Bank raised numerous affirmative defenses in its answer; however, the only defenses pursued at Trial and in the post-trial briefs were the defenses of estoppel and failure to mitigate damages which will be discussed below.

## *CONCLUSIONS OF LAW*

**A. Standards Governing Violation of Section 362 and Civil Contempt**

Once a bankruptcy petition is filed, an automatic stay arises prohibiting creditors from taking certain actions against the debtor or against property of the bankruptcy estate. 11 U.S.C. § 362; *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008). The automatic stay of § 362(a) operates as a stay of acts including "any act to obtain possession of property of the estate or of property from the estate or to *exercise control over property of the estate*" as well as "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(3), (4) (emphasis added).[16] The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't.*

---

[14] Swindle testified that he was aware of Leverette's efforts to implement crop farming operations after he lost his poultry contract and that a tractor was necessary for his plans. *See* Test. of Swindle at 11:40:50–11:42:45. (The Trial was not transcribed. References to testimony are cited by the timestamp of the audio recording.).

[15] (Pre-Trial Order, Adv. Dkt. No. 43, at ¶ 5(B)). The bank did not return the Tractor because it had determined that Leverette could not formulate a plan to repay his debts and, therefore, kept possession of the Tractor. *See* Test. of Swindle at 11:26:34-11:27:15.

[16] There is no dispute that the Tractor was property of the bankruptcy estate.

*of Envtl. Prot.*, 474 U.S. 494, 503 (1986) (citation omitted). It allows a debtor a breathing spell from its creditors and a chance for a fresh start. *Templeton Mortg. Corp. v. Chestnut (In re Chestnut)*, 422 F.3d 298, 301 (5th Cir. 2005).

Only a party injured by a willful violation of the stay can recover damages. 11 U.S.C. § 362(k)(1). A willful violation

> does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005); *see also Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 191 (Bankr. M.D. Fla. 2003) ("willfulness is established by the intentional commission of the violative act, regardless of whether the violator specifically intended to violate the stay") (internal quotations and citation omitted). The Fifth Circuit has established three elements of a willful violation: (1) the offending party must have known of the existence of the stay;[17] (2) the offending party's acts must have been intentional; and (3) the offending party's acts must have violated the stay imposed by Section 362(a). *See Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008).

A court may address violations of the automatic stay by exercising its civil contempt powers under 11 U.S.C. § 105(a).[18] *Milbank v. McGee (In re LATCL&F, Inc.)*, Nos. 3:99-CV-

---

[17] "Knowledge of the bankruptcy petition has been held to be the legal equivalent of knowledge of the automatic stay." *In re Lickman*, 297 B.R. at 190 (citing *In re Lile*, 103 B.R. 830, 837 (Bankr. S.D. Tex. 1989)); *see also In re Repine*, 536 F.3d at 519 (implicitly recognizing the validity of the above stated principle); *In re Chesnut*, 422 F.3d at 302 (same). A party with notice of a bankruptcy has a duty to seek further information which should reveal the applicability and scope of the automatic stay. *In re Lile*, 103 B.R. at 837.

[18] In the Code, Congress provided a debtor with a private right of action under § 362(k) for any willful violation of the automatic stay. Section 362(k) "supplements but does not replace" civil contempt as a remedy for stay violations. *In re Lile*, 103 B.R. at 837 n.4; *In re O'Conner*, No. 01-2135, 2001 WL 1335883, at *1 n* (noting that

2953-R, 398-35100-HCA, 2001 WL 984912, at *5 (N.D. Tex. Aug. 14, 2001) (aff'g finding of civil contempt for violation of automatic stay); *see In re Galloway*, Adv. No. 09-01124-NPO, 2010 WL 364336, at *4 (Bankr. N.D. Miss. Jan. 29, 2010) (*citing In re San Angelo Pro Hockey Club, Inc.* 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003)); s*ee also Sanchez v. Ameriquest Mortg. Co. (In re Sanchez)*, 372 B.R. 289, 311 (Bankr. S.D. Tex. 2007) (automatic stay is self-executing injunction that constitutes order of bankruptcy court for contempt purposes); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1189-1190 (9th Cir. 2003); *Standard Indus., Inc. v. Aquila, Inc. (In re C.W. Mining Co.)*, 625 F.3d 1240, 1246 (10th Cir. 2010); *In re Crum*, 55 B.R. 455, 458-59 (Bankr. M.D. Fla. 1985); 3 Collier on Bankruptcy ¶ 362.12[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011). "The movant in a civil contempt proceeding must show by clear and convincing evidence that: 1) a court order was in effect; 2) the order required certain conduct by the respondent; and 3) that the respondent failed to comply with the order." *In re LATCL&F, Inc.*, 2001 WL 984912, at *3 (*citing Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 400 (5th Cir.1987)). The Fifth Circuit has observed that "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).

---

cause of action under § 362(k) is distinct from court's power to conduct civil contempt proceedings for violation of court order); *In re Sanchez*, 327 B.R. at 311 n.13 (distinguishing two bases for issuing sanctions under § 105(a): (1) enforce provisions of § 362(k) for a party's violation of automatic stay and (2) as part of court's contempt powers for a violation of the court's order imposing automatic stay). Leverette's Complaint seeks an order of contempt.

**B. Analysis of Creditor Conduct**

Community Bank attempts to justify its retention of the Tractor by arguing that neither Leverette nor his counsel specifically requested the return of the Tractor.[19] However, "[w]hen a creditor receives actual notice of the filing of a case, the burden is on the creditor to ensure that the automatic stay is not violated." *Roche v. Pep Boys, Inc.*, 361 B.R. 615, 623 (Bankr. N.D. Ga. 2008). "[I]f [the stay] has been violated prior to receipt of actual notice, the burden is on the creditor to reverse any such action taken in violation of the stay." *Mitchell Constr. Co. v. Smith (In re Smith)*, 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995). "The responsibility is placed on the creditor because 'to place the onus on the debtor . . . to take affirmative legal steps to recover property seized in violation of the automatic stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the breathing spell from his creditors illusory.'" *Roche*, 361 B.R. at 621 (citations omitted); s*ee In re Lile*, 103 B.R. 830, 837 (Bankr. S.D. Tex. 1989) *aff'd*, 161 B.R. 788 (S.D. Tex. 1993) *aff'd in part sub nom. Matter of Lile*, 43 F.3d 668 (5th Cir. 1994) ("Once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay.").

Numerous courts have held that a creditor's continued retention of property of the estate after notice of the bankruptcy filing is a violation of the automatic stay. *Johns v. Nat'l Motor Credit*, Adv. No. 10-05026-KMS, slip opn. at *6 (Bankr. S.D. Miss. Jan. 7, 2013) (*citing Nissan Motor Acceptance Corp. v. Baker*, 239 B.R. 484, 488 (N.D. Tex. 1999)); *see Foust v. Seal (In re Foust)*, No. 98-50774 SEG, 98-5032 SEG, M198-00185, 2000 WL 33769159, at *4-6 (July 18, 2000) (post-petition retention of estate property without court authority following prepetition

---

[19] Leverette testified that he wanted his Tractor back but because he had problems communicating with the bank, he relied on his attorney to handle the matter.

seizure is violation of stay); *Bankers Healthcare Grp., Inc. v. Bilfield (In re Bilfield)*, 494 B.R. 292, 301 (Bankr. N.D. Ohio 2013) ("Courts find a violation of the stay based on an act of omission when a creditor fails to cure a previous violation of the stay or otherwise restore the status quo." (citations omitted)); *In re Belcher*, 189 B.R. 16, 18-19 (Bankr. S.D. Fla. 1995) (adopting majority view that creditor has duty under § 362 to return vehicle and re-establish status quo as of filing of petition after learning of bankruptcy filing; finding that retaining vehicle beyond four days after knowledge of bankruptcy filing was unreasonable).

Community Bank's actions violated the automatic stay imposed by 11 U.S.C. § 362(a). Although the Tractor was repossessed post-petition without knowledge of the bankruptcy filing, the bank's retention of the Tractor after learning of the bankruptcy constitutes a willful violation of the stay. *See Miller v. Savs. Bank of Baltimore (In re Miller)*, 10 B.R. 778, 780 (Bankr. D. Md. 1981) (creditor failing to return vehicle after learning of bankruptcy filing is grounds for contempt); *In re Belcher*, 189 B.R. at 18-19; *see also In re Bilfield*, 494 B.R. at 305 (rejecting innocence argument of creditor who hired process server that served subpoena upon debtor in violation of stay; creditor had affirmative obligation to instruct its agent to stand down).  The Code provides a remedy for creditors facing irreparable harm to their collateral if it is returned to the debtor after filing.  *See* 11 U.S.C. § 362(f); *see also In re Foust*, 2000 WL 33769159, at *5. Rather than return the Tractor, file a motion for relief under § 362(f), or seek to confirm whether it had authority to retain the Tractor, the bank kept the Tractor for months before it filed its motion for relief from stay. The Court is satisfied that Leverette has sustained his burden of proving that the bank willfully the automatic stay.

**C. Damages**

Leverette maintains that because Community Bank repossessed his Tractor, he was unable to implement and complete a plan for crop farming and; as a result, he lost farming income which resulted in the loss of his farm when the stay was lifted. In other words, Leverette maintains that if the bank had not repossessed the Tractor and/or had returned the Tractor upon learning of the bankruptcy, the stay would not have been lifted.[20] Leverette seeks damages including lost farming income.

At Trial and in support of his request for damages, Leverette offered Ben F. Burkett as a farming expert. Community Bank objected to Burkett's qualification as an expert and argued that Burkett's testimony was insufficient to establish any damages because the reports relied on by Burkett do not relate specifically to Leverette's farm. The bank asserted a continuing objection as to Burkett's testimony on the basis that his testimony "d[id] not add anything to the trier of fact to the court to solve the issue." Argument of Gardner 9:50:27-9:50:36.

The admissibility of expert testimony under Rule 702 requires that two preliminary determinations be made by the court. Fed. Rule of Evid. 104(a). First, the court must decide whether expert testimony could assist the trier of fact in understanding the evidence or determining a fact in issue. Second, the court must also determine whether the witness called is properly qualified to give the testimony sought. The party offering the expert must prove admissibility of such expert testimony by a preponderance of the evidence. *Elliott v. Amadas Indust. Inc.*, 796 F. Supp. 2d 796 (S.D. Miss. 2011) (*citing US v. Hicks*, 389 F.3d 514 (5th Cir. 2004); *US v. Fullwood*, 342 F.3d 409 (5th Cir. 2003)).

---

[20] In the relief from stay litigation, Leverette maintained that he had a farming plan and contracts for purchase of his crops. (*See* Dkt. No. 94). However, no evidence of such plan or contracts was submitted. *Id.* At Trial, Leverette offered a letter from Burkett and an "acreage and production worksheet with income forecast." (proposed Trial Ex. Debtor-1). Despite the fact that the letter and worksheet were available prior to and/or during the relief from stay litigation, these documents were presented to the Court for the first time at the Trial.

The Court has reviewed Burkett's curriculum vitae (proposed Trial Ex. Debtor-1) and is satisfied that Burkett possesses the requisite "knowledge, skill, experience, training or education" to qualify as an expert in the area of farming under Federal Rules of Evidence 702. *See Holiday v. City of Jackson*, *Miss.*, 3:11-CV-202-CWR-FKB, 2013 WL 3821607, at *5 n.2 (S.D. Miss. July 23, 2013). The issue is whether Burkett's testimony assists the trier of fact.

According to Burkett, he first met Leverette in 2011 through the Mississippi Association of Cooperatives and has personally visited Leverette's farm on a couple of occasions. Burkett assisted Leverette in formulating a plan for crop farming. On its face, the Acreage and Production Worksheet with Income Forecasts (the "Income Forecast Report") sought to be admitted into evidence as the expert's report is devoid of any detail as to how the income figures were obtained. Burkett explained that he derived the net income figure on the Income Forecast Report using "Mississippi State figures" and figures based on his personal farming experience regarding profits per acre for certain crops like okra and collard greens. Burkett represented that the Income Forecast Report takes into account expenses including labor, seed, chemicals, packaging, costs of transporting crops to market and marketing fees. However, the report itself lacks any gross income figures and an itemization of expenses. As such, the Court finds it unreliable and not helpful to the trier of fact.

Aside from the deficiencies in the Income Forecast Report, Burkett's testimony cast doubt on Leverette's damages. Burkett testified that he thought Leverette could pursue farming if he could obtain money for start-up costs. There was no itemization of such costs or any discussion of how Leverette would realistically obtain money for start-up costs. Burkett testified that an 86 horse power tractor such as the one repossessed by the bank would have been sufficient to farm Leverette's acreage and that a tractor was necessary for Leverette's farm plan.

He elaborated that a tractor is required for prepping the soil, seeding and cultivating the land. Burkett further explained that no matter how "good" a plan, farming is volatile to factors such as weather and labor. According to Burkett, water is essential for a successful farming operation. Burkett's own farm has an irrigation system and Leverette's did not; and Burkett advised Leverette to seek assistance regarding this issue from an agency. Burkett also testified that his biggest concern with Leverette's proposed operation was labor—a key factor in farming. Leverette testified that he would rely on his two sons and, during the summer, his three minor grandchildren, for labor. The grandchildren range in age from 11 to 15 years old. Burkett testified that he used over 20 laborers in his personal farming operation, which is a little over twice the size of Leverette's farm. On the whole, Burkett's testimony pointed out the issues with Leverette's plan and is insufficient to support a quantifiable award of lost income.

### 1. Actual Damages – Lost Income

Leverette's proof of lost income is speculative at best. The evidence tends to show that even with the Tractor, the Debtor would have been unable to complete the farm plan.[21] Therefore, the Court finds that Leverette failed to meet his burden to prove his lost income damages. Leverette did not testify to any other personal costs associated with the bank's violation of the stay.

### 2. Actual Damages – Attorney Fees

In his post-trial brief, Leverette requests attorney's fees. The Court finds that an award of reasonable attorney's fees as compensation for the bank's willful violation of the stay is warranted. *See United States v. Alcoa, Inc.*, 533 F.3d 278, 287 (5th Cir. 2008); *see also*

---

[21] Leverette testified that he borrowed a tractor and planted some crops. He lost over ¾ of the crops to grass and weeds. Leverette's testimony seemed to indicate that he filed a claim under a crop insurance policy but the claim was denied based on a finding that the crop damage was due to mismanagement.

*Travelhost, Inc. v. Blandford*, 68 F.3d 958, 962 (5th Cir. 1995); *Hill v. Farmers Home Admin. (In re Hill)*, 19 B.R. 375, 379 (Bankr. N.D. Tex. 1982) ("The [c]ourt has discretion to order . . . reasonable attorney's fees, occasioned by the failure of [creditor] to observe the automatic stay"). The Court will consider such award upon proper motion filed within fourteen (14) days of the entry of this opinion, along with supporting fee itemization.

### 3. Punitive Damages

In his post-trial brief, Leverette also requests punitive damages. However, punitive damages may not be awarded under the Court's civil contempt power. *In re* Roman, 283 B.R. 1 (B.A.P. 9th Cir. 2002) (punitive damages may be awarded under § 362(k) but not under Court's civil contempt power); *see Am. Airlines*, 228 F.3d at 585 ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."); *see also Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 266 (5th Cir. 2009) (if purpose of sanction is to punish the contemnor, order is viewed as criminal in nature; "[B]ankruptcy courts lack criminal contempt power, at least regarding conduct occurring outside the presence of the court . . . ."). Even if the Court reads the Complaint as an action for violation of the stay pursuant to § 362(k),[22] the Court is not inclined to award punitive damages in this case.[23] Therefore, Leverette's request is denied.

---

[22] *See In re Reyes*, No. 10-52366-C, 2011 WL 1522337, *1 (Bankr. W.D. Tex. Apr. 20, 2011) ("while debtors' motion is called a motion for contempt, it could also be read as action for violation for stay pursuant to § 362(k)) abrogated by In re Halo Wireless, Inc., 684 F.3d 581 (5th Cir. 2012).

[23] The Fifth Circuit has held that, under 11 U.S.C. § 362(k), "appropriate circumstances" meriting punitive damages exist when the Court finds "egregious, intentional misconduct on the violator's part." *In re Repine*, 536 F.3d at 521 (internal quotations and citation omitted).

### 4. Duty to Mitigate Damages

Community Bank asserts that Debtor failed to mitigate his damages because he waited eight months to file the turnover action, instead of filing a turnover action immediately after the bank's post-petition repossession of the Tractor.  However, under the facts and circumstances of this case, the Court finds that Leverette did take steps to mitigate his damages, including alerting his counsel that he wanted the Tractor back and borrowing a tractor so that he could begin his farming operations.  The bank was well aware of automatic stay but brazenly retained the Tractor, knowing that Leverette was attempting to begin crop farming operations in an effort to repay the bank.

### D. Estoppel

In its Amended Trial Brief (Adv. Dkt. No. 48) (Community Bank's Brief), Community Bank asserts that the Debtor is estopped from bringing his claim for contempt because he failed to raise the claim before the Court entered its Order Granting Motion to Lift Stay and for Abandonment. (Community Bank's Br., at 1).  Leverette did not address this allegation in his Trial Brief (Adv. Dkt. No. 49).  However, the Court notes that Leverette did assert that "the creditor has taken the debtor s [sic] tractor and has refused to return the same" in his response to the bank's motion for relief from the automatic stay. (Dkt. No. 64).  In sum, the bank argues that it should not be liable for damages for the "non-return of the collateral when [the Debtor] never filed a motion for turnover of that collateral." (Community Bank's Br., at 2).  The bank incorrectly shifts the blame to the Debtor for not filing a request for turnover immediately after the post-petition repossession. However, after learning of the bankruptcy filing, it is the *creditor* that has a duty under § 362 to re-establish the status quo as of the filing of the petition. *In re*

*Belcher*, 189 B.R. at 18-19 (adopting majority view that creditor has duty under § 362 to return vehicle after learning of bankruptcy filing).

Community Bank does not cite any case law or other authority to support a defense of waiver or estoppel. The Court's own research did not uncover any binding authority that would support the bank's estoppel position under the facts of this case.[24] The Court is unwilling to adopt such an argument as a total defense to liability for violation of the stay in this case, as doing so would effectively shift the burden from the creditor to return the property, to the debtor to file a turnover action. Moreover, the Code contemplates and provides procedures for creditors to prevent irreparable damage to collateral. *See* 11 U.S.C. § 362(f). Community Bank did not seek relief under Section 362(f). The Court further notes that the Lift Stay Order granted relief from the stay as of the date of the order; it did not annul the stay. Thus, the bank's estoppel argument is without merit.

## *CONCLUSION*

In sum, the Court finds that Community Bank's retention of the Tractor after receiving notice of the automatic stay supports a finding of contempt. Leverette failed to sufficiently prove his alleged loss of income; however, the Court will consider an award of costs and attorney fees upon proper motion, along with supporting fee itemization, filed within fourteen (14) days of the entry of this opinion so that a final judgment may be entered by the Court.

Katharine M. Samson
United States Bankruptcy Judge
Dated: September 25, 2013

---

[24] *See In re Curtis*, 322 B.R. 470, 486 (Bankr. D. Mass. 2005) (describing defendants' asserted stay violation defenses of laches, estoppel, and waiver as "frivolous").